# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **MICHAEL JONES and CIEVONN JONES,** *Plaintiffs*, v. **LENDMARK FINANCIAL SERVICES LLC** *et al.*, *Defendants*. | **CIVIL ACTION NO. 5:24-cv-00389-TES** |

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Before the Court is Defendants Lendmark Financial Services, LLC and ALS Resolvion, LLC's Motion to Compel Arbitration [Doc. 14]. Their motion has been fully briefed, and after careful consideration of the parties' arguments, the Court **GRANTS** Defendants' Motion to Compel Arbitration.

## BACKGROUND

Plaintiffs Michael and Cievonn Jones filed this action on October 30, 2024,[1] alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and Article 9 of the Georgia Uniform Commercial Code, O.C.G.A. § 11-9-101 for events that occurred on February 11, 2024. *See generally* [Doc. 5]. On January 17, 2021, Mr. Jones signed a security agreement with Lendmark Financial for a loan to purchase a car. [Doc.

---

[1] Plaintiffs filed an Amended Complaint [Doc. 5] on January 17, 2025. Under black letter federal law, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted).

5, ¶¶ 39, 41]; [Doc. 14-1, p. 5]. The Security Agreement lists seven ways Mr. Jones could default on the note over its five-year duration. [Doc. 14-1, p. 6]. Lendmark Financial alleges that Mr. Jones defaulted on the loan. [Doc. 11, ¶ 46]; [Doc. 14, p. 2].

Following Mr. Jones' default, Plaintiffs allege that Lendmark Financial worked with its repossession agent, ALS Resolvion, to repossess the car. [Doc. 5, ¶¶ 23–26]. Plaintiffs also allege that ALS Resolvion hired Hide N Seek Towing & Recovery LLC[2] to physically go to their home and repossess the car. [*Id.* at ¶ 47]. Hide N Seek admits that ALS Resolvion hired it to repossess Mr. Jones' car and that it endeavored to do so on February 11, 2024. [*Id.* at ¶¶ 47–48]; *in connection with* [Doc. 10, ¶ 13]. During the attempted repossession, Mrs. Jones got in the car and refused to leave. [Doc. 5, ¶ 52]. Plaintiffs asked Hide N Seek to leave, but Hide N Seek refused to leave Plaintiffs' property without the car in tow. [*Id.* at ¶¶ 54–55]. A verbal confrontation ensued leading to police presence on Plaintiffs' property not once, but twice. [*Id.* at ¶¶ 56–65]. Apparently, the altercation became "loud and rowdy," and Mr. Jones, at one point, came out of his house brandishing a gun. [*Id.* at ¶ 56]; [Doc. 10, ¶ 29]. Although the police officers eventually forced Hide N Seek to cease its repossession efforts, Plaintiffs allege that Hide N Seek had already physically injured Mrs. Jones. [Doc. 5, ¶ 69]; [Doc. 10, ¶¶ 24–29].

---

[2] The Court notes that Hide N Seek is not a party to Lendmark Financial's and ALS Resolvion's efforts to compel Plaintiffs' case to arbitration.

**DISCUSSION**

When Mr. Jones signed the Security Agreement, he also signed an Arbitration Agreement.³ [Doc. 14-1, pp. 7–9]. According to Plaintiffs' Response [Doc. 19], Mr. Jones does not object to Defendants' efforts to compel *his claims* to arbitration. [Doc. 19, p. 1]. Notwithstanding Mr. Jones' consent to arbitration, however, Plaintiffs argue that Mrs. Jones cannot be compelled to arbitrate her claims against ALS Resolvion and Hide N Seek. *See generally* [*id.*]. Defendants disagree and seek an order from the Court that stays this litigation and compels Mrs. Jones to arbitrate her claims as well. [Doc. 14, p. 15].

**A.     The Federal Arbitration Act**

Congress enacted the Federal Arbitration Act ("FAA") "[t]o overcome judicial resistance to arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA declares a "liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

³ Both the Security Agreement ("**APPLICABLE LAW**") and the Arbitration Agreement ("**Governing Law**") contain choice of law provisions designating Georgia as the controlling state law, if state law applies. [Doc. 14-1, pp. 6, 9].

9 U.S.C. § 2. Section 3 directs courts to stay proceedings in any case raising a dispute referrable to arbitration. 9 U.S.C. § 3. And Section 4 allows a court to issue an order compelling arbitration when parties do not comply with their arbitration agreement. 9 U.S.C. § 4.

"Arbitration is a matter of contract and consent." *JPay, Inc. v. Kobel*, 904 F.3d 923, 928 (11th Cir. 2018). "Arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)). "Because of the FAA, federal courts are required to place arbitration clauses on equal footing with other contracts." *Solymar Inv. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012). Even so, federal courts must interpret arbitration clauses broadly where possible. *Id.* (citing *AT&T Techs.*, 475 U.S. at 649–50).

In deciding this matter, the Court must determine three things. First, it must determine whether there is a valid written agreement to arbitrate.[4] *Green v. CVS Health*, No. 3:23-cv-00076-TES, 2023 WL 7287202, at *1 (M.D. Ga. Nov. 3, 2023) (citing *Collins v. Int'l Dairy Queen, Inc.*, 2 F. Supp. 2d 1465, 1468 (M.D. Ga. 1998)). Second, are the issues arbitrable under the agreement? *Id.* And third, the Court looks to whether a plaintiff has

---

[4] The standard for motions to compel is akin to the summary-judgment standard. Therefore, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

failed or refused to arbitrate the claims at issue. *Id.*

### 1. There Is a Valid Written Agreement to Arbitrate.

Under the FAA, arbitration agreements are presumptively valid unless there are contractual grounds to revoke the contract. 9 U.S.C. § 2. To determine whether an enforceable arbitration agreement exists, the Court looks to Georgia law. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."). Under Georgia law, a valid contract requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. "[U]nless and until there is the mutual assent of the parties to all essential terms, there is no complete and enforceable contract*." Extremity Healthcare, Inc. v. Access to Care Am., LLC*, 793 S.E.2d 529, 534 (Ga. Ct. App. 2016). In determining assent, Georgia courts "apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent." *Id.* (quoting *Hart v. Hart*, 777 S.E.2d 431, 433 (Ga. 2015)). "The party asserting the existence of a contract has the burden of proving its existence and its terms" by a preponderance of the evidence. *Bazemore*, 827 F.3d at 1330 (quoting *Jackson v. Easters*, 379 S.E.2d 610, 611 (Ga. Ct. App. 1989)).

### 2. Mrs. Jones' Claims Are Arbitrable Under the Agreement.

The arbitration agreement Mr. Jones signed is very broad. [Doc. 14-1, pp. 4–9]. It requires arbitration of: "(4) claims not only against us, but also against our parent entity, affiliates, successors, predecessors, assignees, controlling persons, directors, officers, employees, and agents" and "(6) claims made by anyone connected with you or claiming through you, such as a co-applicant, co-signer, representative, agent, successor, heir, assignee, or trustee in bankruptcy . . . ." [*Id.*]. Mrs. Jones' claim against ALS Resolvion falls under the arbitration agreement because she is "connected with" Mr. Jones. The list of ways a co-plaintiff can be "connected with" or "claiming through" Mr. Jones is not exhaustive and includes examples like successor and heir. As Mr. Jones' spouse, Mrs. Jones easily falls within the category of "connected with." So, the Court need not look at whether third-party claims under the FDCPA are through the debtor to determine that Mrs. Jones claims are arbitrable under the agreement.

However, this does not resolve the issue of whether Mrs. Jones as a nonsignatory to the contract can be compelled to arbitrate her claims. Typically, nonsignatories to an arbitration agreement cannot be compelled to arbitrate, but, in certain circumstances, the theory of equitable estoppel provides a means of bringing a nonsignatory within the terms of an arbitration agreement. *LaSonde v. CitiFinancial Mtg. Co.*, 614 S.E.2d 224, 226 (Ga. Ct. App. 2005). State law determines if a nonsignatory is bound by an arbitration agreement. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) ("the FAA permits a nonsignatory to rely on state-law

equitable estoppel doctrines to enforce an arbitration agreement") (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009)). And under Georgia law, equitable estoppel can apply to a nonsignatory plaintiff's claim against signatory defendant where the arbitration agreement was executed by a co-plaintiff and defendant. *LaSonde*, 614 S.E.2d at 226. Although it seems the Georgia courts have not applied equitable estoppel to compel arbitration between two nonsignatory parties, this Court is convinced that the principals of equitable estoppel can still guide it to answering the question of whether Mrs. Jones—as a nonsignatory—must arbitrate her claims against ALS Resolvion—another nonsignatory.

As a first example, in *LaSonde*, the Georgia Court of Appeals affirmed the trial court's order which compelled a wife to arbitrate her claims against a signatory lender because her claims were virtually identical to her co-plaintiff husband's who signed the loan with the defendants. *LaSonde*, 614 S.E.2d at 226. The court held that a nonsignatory to an arbitration agreement can be compelled to arbitrate her claims against a signatory defendant because the claims were so intertwined with the signatory plaintiff's claims and presumed the existence of the contract. *Id.* The husband defaulted on the loan for the couple's house, the lender started foreclosure proceedings, and then the couple filed a lawsuit claiming the foreclosure was wrongful. *Id.* at 225. When her husband signed the loan, the wife had no interest in the property. *Id.* The wife's claims related directly to or presumed the existence of the contract that incorporated the arbitration agreement.

Plaintiffs' case also closely mirrors *Helms v. Franklin Builders, Inc.*, in which the Georgia Court of Appeals affirmed the trial court's order to compel a nonsignatory wife to arbitrate her claims against the signatory builders and nonsignatory home warranty provider of the couple's home. 700 S.E.2d 609, 610 (Ga. Ct. App. 2010); *Helms v. Franklin Builders, Inc.*, No. 2008-5667-3, 2009 WL 6962571 (Ga. Super. Nov. 13, 2009), *aff'd* 700 S.E.2d 609. In *Helms*, the couple brought identical claims for negligence, breach of implied warranty of habitability, fraud in the inducement, and tortious interference. *Id.* at 611. On appeal, the court found that because the wife's claims "arise under and presume the existence of the purchase-and-sale agreement and are so intertwined with her husband's claims . . . she is estopped from avoiding arbitration." *Id.* at 612. Additionally, the court reasoned that "requiring [the wife] to assert her claims in the same forum as her husband eliminates the potential for 'varying decisions, discreditable to the administration of justice.'" *Id.*

Like in *LaSonde* and *Helms*, Mr. Jones and Lendmark Financial executed a contract with an incorporated arbitration agreement, and now Mrs. Jones is pursuing claims against nonsignatories Hide N Seek and ALS Resolvion. [Doc. 5, ¶¶ 41, 86]. Mr. Jones allegedly defaulted on his loan, Defendants' initiation of the repossession of Mr. Jones' car, and Plaintiffs are now claiming Defendants unlawfully repossessed the car. [Doc. 11, ¶ 46]; [Doc. 5, ¶¶ 47–48, 75–77]. Here, *LaSonde* and *Helms* provide excellent guidance for the arbitration issue before the Court. According to Plaintiffs' Amended

8

Complaint, the claims Mrs. Jones is bringing are the same as Mr. Jones's and are based on the same underlying set of facts. *See* [Doc. 5, ¶ 86]; *LaSonde*, 614 S.E.2d at 225; *Helms*, 700 S.E.2d at 611. Additionally, and not in Mrs. Jones's favor, Mrs. Jones decided to sit in the car when Hide N Seek attempted to repossess it. [Doc. 5, ¶ 52]. She clearly and quite literally inserted herself into the situation that led to Hide N Seek's alleged breach of the peace. [*Id.* at ¶ 77].

Plaintiffs argue that equitable estoppel can only be applied to compel a nonsignatory plaintiff to arbitrate claims based in contract. [Doc. 19, p. 2]. They are wrong.[5] Mrs. Jones's claims are based on the FDCPA and assert that Hide N Seek and ALS Resolvion violated 15 U.S.C. § 1692f(6)(A).[6] *See* [Doc. 5, ¶ 86]. Mrs. Jones is seeking relief for alleged injuries caused by Hide N Seek employees while they were attempting to repossess Mr. Jones' car acting on behalf of Lendmark Financial. [*Id.* at ¶¶ 47–48, 64, 70]. Plaintiffs' allegations are far from any model of clarity, but those against Hide N Seek and ALS Resolvion appear to be the same for both Mr. and Mrs. Jones. [*Id.* at

---

[5] Mrs. Jones argues her claims are distinct from the wives in *LaSonde* and *Helms* because they are based on the FDCPA. [Doc. 19, pp. 4–5]. To support this assertion, she cites to two unpublished opinions from other circuit courts finding that certain FDCPA claims are based in tort or statutory instead of contract. *See Dotson v. AWA Collections*, No. 22-6078, 2023 WL 3055574, at *3 (10th Cir. Apr. 24, 2023) ("these FDCPA claims sounded in tort, not contract"); *Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-DLR, 2015 U.S. Dist. LEXIS 180890, at *14 (D. Ariz. Mar. 20, 2015) ("the FDCPA claim arose out of statute"). However, a claim can presume the existence of a contract without being based in contract law, and in *Helms* this argument was unsuccessful in the trial court. *Helms*, 2009 WL 6962571, *aff'd* 700 S.E.2d at 611.

[6] "Taking . . . any nonjudicial action to effect dispossession or disablement of property if—there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" 15 U.S.C. § 1692f(6)(A).

¶¶ 85–86]. Mrs. Jones' claims "relate directly to . . . or presume the existence of" Mr. Jones' car note which incorporates an arbitration agreement because she would have had no car to sit in without the Agreements. *LaSonde*, 614 S.E.2d at 226; [Doc. 5, ¶¶ 47–48, 52, 63–64]. Her claims arise from her husband's agreement with Lendmark Financial, which is subject to a valid written agreement to arbitrate. [Doc. 14-1, p. 7–9]. Plaintiffs do not dispute the validity of the arbitration agreement. [Doc. 19, p. 1]. Thus, Mrs. Jones is estopped from pursuing her claims in federal court because the Agreements are valid under Georgia contract law, under which a nonsignatory claim can be compelled to arbitration when it "presumes the existence of" the arbitration contract and arose from "substantially interdependent and concerted misconduct" such that it is intertwined with the signatory's claim. *Price v. Ernst & Young, LLP*, 617 S.E.2d 156, 160 (2005). Finally, "[i]n all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness." *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1172 (11th Cir. 2011).

Finally, Mrs. Jones will not be prejudiced in any way by compelling her to arbitrate her claim against ALS Resolvion because Plaintiffs claims are based on a common nucleus of facts and Plaintiffs share an attorney. It would instead be a waste of judicial economy and increase the potential for varying decisions to allow her to litigate her claim against ALS Resolvion. *See LaSonde*, 614 S.E.2d at 226; *see also Autonation Fin. Services Corp. v. Arain*, 592 S.E.2d 96 (Ga. App. 2003) (finding that potential for

conflicting decisions is one factor to consider in determining whether nonsignatory should be bound by arbitration agreement). So, equitable estoppel applies to Mrs. Jones' claims against ALS Resolvion and Hide N Seek, if Hide N Seek desires to arbitrate.[7]

### 3. Plaintiffs Have Failed to Arbitrate the Claims.

The last prong to determine whether Defendants' motion should be granted is met because Plaintiffs filed this lawsuit instead of arbitrating their claims. By resorting first to the federal courts and not arbitration or a small claims court, as allowed by the Agreements, Plaintiffs have failed to arbitrate their claims.

### CONCLUSION

Based upon the foregoing, the Court **GRANTS** the Motion to Compel Arbitration for both Plaintiffs claims against Lendmark Financial and ALS Resolvion [Doc. 14] and **STAYS** this case pending the outcome of arbitration. *See* 9 U.S.C. § 3. The Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case. The parties **SHALL** file a status report with the Court within 30 days following the completion of arbitration.

**SO ORDERED**, this 7th day of July 2025.

<u>S/ Tilman E. Self, III</u><br>
**TILMAN E. SELF, III**<br>
**UNITED STATES DISTRICT JUDGE**

---

[7] "The parties have cited to no case—and we are aware of none—in which a nonsignatory defendant has been compelled to arbitrate claims brought against it by a signatory to the arbitration agreement, even where the signatory plaintiff is also asserting claims against a signatory defendant." *Burke Moore L. Grp., LLP v. Drew Eckl & Farnham, LLP*, 914 S.E.2d 333, 339 (Ga. Ct. App. 2025) (citing *Order Homes, LLC v. Iverson*, 685 S.E.2d 304 (Ga. Ct. App. 2009)).